IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Criminal Case No. 17-cr-00235-PAB-3

UNITED STATES OF AMERICA,

    Plaintiff,

v.

3. FAUSTINO B. JUAREZ,

    Defendant.
_____

**ORDER**
_____

    This matter comes before the Court on the government's *James* Proffer [Docket No. 94-1] and the government's amended *James* log [Docket No. 119-1]. The Court held a *James* hearing on April 13, 2018.

**A. The Existence of a Conspiracy and its Membership**

    "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *United States v. Lewis*, 594 F.3d 1270, 1282 (10th Cir. 2010) (quoting Fed. R. Evid. 801(c)). "Although hearsay statements are generally not admissible at trial, *see* Fed. R. Evid. 802, 'a statement by a coconspirator of a party during the course and in furtherance of the conspiracy' is not hearsay, and is therefore admissible as substantive evidence against the party." *United States v. Hall*, 473 F.3d 1295, 1302-03 (10th Cir. 2007) (quoting Fed. R. Evid. 801(d)(2)(E)). For a statement to be admissible under Fed. R. Evid. 801(d)(2)(E), the district court must first find the following elements by a

preponderance of the evidence: "(1) that a conspiracy existed; (2) that the declarant and the defendant were both members of the conspiracy; and (3) that the statements were made in the course of and in furtherance of the conspiracy." *Id.*

Under Tenth Circuit law, the district court makes these factual determinations regarding the admissibility of co-conspirator statements under Fed. R. Evid. 801(d)(2)(E) by using one of two procedures: "(1) it may hold a 'James hearing'" – a preliminary hearing outside the presence of the jury expressly for the purpose of making such determinations, *see generally*, *United States v. James*, 590 F.2d 575 (5th Cir. 1979), or "(2) it may provisionally admit the evidence with the caveat that the evidence must 'connect up' during trial, i.e., that the party offering the evidence must prove the existence of the predicate conspiracy through trial testimony or other evidence." *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995). The Tenth Circuit has expressed its "strong preference for *James* proceedings." *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007), quoting *United States v. Gonzalez–Montoya*, 161 F.3d 643, 648 (10th Cir. 1998). "The reason for this preference is that if the court provisionally admits a statement with the idea that the statement and other evidence will later 'connect up' showing the existence of a predicate conspiracy, there is the risk of undue prejudice if in the end the evidence does not in fact 'connect up.'" *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994) (internal citations and quotations omitted). Regardless of which procedure is followed by the district court, the same facts must be proven by a preponderance of the evidence in order for the statements to

be admissible. *Townley*, 472 F.3d at 1273; *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996).

In determining whether a conspiracy exists, "the court may consider the hearsay statement sought to be admitted, along with independent evidence tending to establish the conspiracy." *Lopez-Gutierrez*, 83 F.3d at 1242. The existence of a conspiracy may be "inferred from a unity of purpose or common design and understanding among conspirators to accomplish the objects of the conspiracy." *United States v. Thompson*, 518 F.3d 832, 853 (10th Cir. 2008) (internal quotations and citations omitted). It may also be inferred "from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose." *United States v. Scull*, 321 F.3d 1270, 1282 (10th Cir. 2003). However, the inference of an agreement must be more than mere speculation or conjecture. *United States v. Delgado-Uribe*, 363 F.3d 1077, 1083 (10th Cir. 2004). For its preliminary determination under Fed. R. Evid. 801(d)(2)(E), it is not necessary for the government to prove that the conspiracy was for unlawful purposes. *United States v. Martinez*, 825 F.2d 1451, 1452 (10th Cir. 1987).

Evidence showing a defendant's involvement in a conspiracy may include the co-conspirator statements themselves, but there must also be some independent evidence beyond those statements that links the defendant to the conspiracy. *See Lopez-Gutierrez*, 83 F.3d at 1242. The independent evidence may be sufficient even if it is not substantial. *Id*. While "mere presence at the crime scene is not sufficient in and of itself" to establish a defendant's involvement in a conspiracy, it is "a material and

probative factor which the jury may consider." *United States v. Savaiano*, 843 F.2d 1280, 1294 (10th Cir. 1988). It may be presumed "that a defendant acting in furtherance of a conspiracy is a knowing participant therein." *United States v. Delgado-Uribe*, 363 F.3d 1077, 1083 (10th Cir. 2004). "[A] conspiracy, once instituted, continues to exist until it is abandoned, succeeds, or is otherwise terminated by some affirmative act, such as withdrawal by the defendant." *United States v. Russell*, 963 F.2d 1320, 1322 (10th Cir. 1992).

"[I]n deciding whether the offering party has satisfied its burden at a *James* hearing, the district court has the discretion to consider any evidence not subject to a privilege, including both the coconspirator statements the government seeks to introduce at trial and any other hearsay evidence, whether or not that evidence would be admissible at trial." *United States v. Owens*, 70 F.3d 1118, 1124 (10th Cir. 1995). "The co-conspirator hearsay exception contains no requirement that the declarant be a defendant, only that she be a member of the conspiracy." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1081 n. 5 (10th Cir. 2006) (internal citations omitted). "[T]here is no requirement that a district court make findings on the record *before* the nonhearsay is admitted. The court must only resolve the preliminary Rule 801 questions and 'be satisfied that the statement actually falls within the definition of the Rule.'" *United States v. Merrick*, 299 F. App'x 820, 823 (10th Cir. 2008), quoting *Bourjaily v. United States*, 483 U.S. 171, 185 (1987) (emphasis in original).

At the *James* hearing, defendant Faustino Juarez ("the defendant") was the only defendant to oppose the government's *James* proffer. He conceded that each of

the statements listed on the government's *James* log is admissible under Fed. R. Evid. 801(d)(2)(E). The defendant, however, did not concede that defendant was a member of the charged conspiracy. As a result, the hearing focused solely on that issue.

The Court finds that the government has shown that a conspiracy to possess with the intent to distribute and to distribute a quantity of 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine did exist and that such conspiracy operated between at least September 1, 2016 and June 29, 2017.

The Court finds that the government has proven by a preponderance of the evidence that the conspiracy included the following members:

    a.    Faustino B. Juarez;

    b.    Johnny Joe Juarez;

    c.    Jesus Leonell Gonzalez;

    d.    Susana Lara-Guerra; and

    e.    Gonzalo Lara-Guerra.

At the hearing, the defendant did not contest the fact that the defendants named in the indictment, other than himself, are members of the conspiracy charged in the indictment. However, he denied that he was a member.

The United States called one witness at the hearing, Drug Enforcement Administration Special Agent Brett Campbell. Special Agent Campbell testified that one person told law enforcement officers that he had done at least ten prior methamphetamine and cocaine deals in the defendant's bedroom. During such deals, defendant Johnny Joe Juarez, the defendant's son, would remove "different sorts of

5

narcotics" from the dresser drawers in the bedroom.  When a search warrant was executed on the defendant's house on June 29, 2017, eight different drug exhibits were seized from the bedroom, including a half kilogram of cocaine and a pound of methamphetamine located in different dresser drawers.  A handgun was located in a dresser drawer about a foot from drugs.  A digital scale commonly used in drug transactions was found in a dresser drawer next to an expired identification card of the defendant.  Smaller quantities of drugs were also located in the bedroom.  Special Agent Campbell testified that there were two dressers in the bedroom, both of which contained the defendant's clothes.

On cross-examination, Special Agent Campbell acknowledge that Johnny Joe Juarez made a statement to law enforcement officers after his arrest wherein Johnny Joe Juarez denied his father's involvement with drug sales occurring in the father's bedroom.  He stated that he would use his father's bedroom for drug dealing, but would clean it up before his father returned home from work.  Johnny Joe Juarez stated that, the day the search warrant was executed, he intended to clean up the narcotics in the bedroom, but could not do so because he was arrested.

Special Agent Campbell testified that Faustino Juarez was present during execution of the search warrant, after having returned to the house approximately an hour before.  Special Agent Campbell gave the defendant a Miranda warning and the defendant chose to answer questions.  The defendant denied having knowledge of drugs in his bedroom and denied knowing that his son Johnny was a drug dealer.  Special Agent Campbell informed him that the agents found drugs "commingled with T-shirts, underwear, socks, clothing" and asked him why he did not notice large plastic

6

bags of drugs when he changed his clothes or put fresh clothes back in the drawers. The defendant replied that he just works and is so tired when he gets home that "he doesn't have time to even look in his drawers." When the agents asked him about the scale found in the dresser, the defendant stated that "he is so tired when he gets home that he just sleeps."

At the conclusion of the government's evidence, the defendant argued the following: (a) that co-defendant Johnny Joe Juarez said that he used his father's bedroom as a temporary storage site and, on the day the search warrant was executed, he intended to retrieve the drugs before his father returned, but was instead arrested; (b) that Faustino Juarez disclaimed knowledge of the drugs found in his bedroom; (c) that the government has no evidence that Faustino Juarez was involved in drug dealing; and (d) even assuming that Faustino Juarez knew of the drugs in his dresser drawers, mere knowledge of drug storage without more does not equal membership in the conspiracy. Therefore, the defendant argues that the government has failed to show by a preponderance of the evidence that Faustino Juarez was a member of the conspiracy.

The Court agrees with the defendant that, by itself, evidence that Johnny Joe Juarez used his father's bedroom as a place to conduct drug deals is equivocal. The evidence established that the defendant worked during the times that the deals took place, and Johnny Joe Juarez said that the drugs were removed before his father returned home. However, the Court finds that the totality of the evidence presented at the hearing proves by a preponderance of the evidence that the defendant had knowledge of narcotics being stored in his bedroom. Upon execution of the search

7

warrant, the agents found large bags of narcotics in separate drawers in the dressers located in the defendant's bedroom. They also found smaller quantities of drugs in the bedroom. The drugs were "commingled" with the T-shirts, underwear, and socks. A handgun and a digital scale were found in the drawers as well. Assuming that Johnny Joe Juarez used his father's bedroom to conduct drug deals and placed the drugs in dresser drawers to keep them out of sight of customers until needed, there would be no apparent need to commingle the drugs with clothing. Rather, the Court finds that the commingling leads to an inference of the drugs being stored in the drawers on a longer term basis than just during the day. If the drugs were present in the dresser drawers while the defendant was present, especially overnight, the defendant would be aware of them.

The defendant's statements also lead to an inference that he was aware of his dressers being used for drug storage. Although the defendant denied knowledge of the drugs, he also made the statement that, because he is so tired after work, he never looks in his drawers. Someone who works a regular job does what everyone else who works does, routinely accesses the dresser drawers to get fresh clothes. The statement that he was too tired to look in the drawers creates the inference that the defendant was covering up his knowledge of the drugs with an implausible denial, particularly given that most people would put on new clothes first thing in the morning after having slept all night.

The next issue is whether the defendant's knowledge of the drugs in his dresser drawers establishes his membership in the conspiracy. The Court finds that the circumstantial evidence presented at the hearing proves by a preponderance of the

evidence that he was a member. First, his knowledge of the drugs shows that, as the owner of the house and the only occupant of the bedroom, he knowingly allowed his bedroom to be used to store drugs. Second, his denial of knowledge that his son was a drug dealer rings false given that, if the drugs did not belong to the defendant, they logically must have belonged to his son who lived in the house. Although one could infer that the defendant had no more than a "don't ask, don't tell" knowledge of drug dealing in his bedroom, the more persuasive inference is that the defendant knowingly facilitated the objectives of the conspiracy by allowing its members to use his bedroom to store narcotics. Thus, the Court finds that the government has shown, by the preponderance of the evidence, that the defendant was a member of the conspiracy charged in the indictment.

## B. Preliminary Determination of Admissibility Under Fed. R. Evid. 801(d)(2)(E)

The Court makes a preliminary determination of admissibility pursuant to Rule 801(d)(2)(E) that each of the following statements listed in the government's James log was made by a co-conspirator in furtherance of the conspiracy and is admissible under Rule 801(d)(2)(E):

| No. | Date | Participants |
| --- | --- | --- |
| 1 | 12/4/16 | CS; Jesus Leonell Gonzalez |
| 2 | 12/5/16 | CS; Jesus Leonell Gonzalez |
| 3 | 12/7/16 | CS; Jesus Leonell Gonzalez |
| 4 | 12/13/16 | CS; Jesus Leonell Gonzalez |
| 5 | 12/13/16 | CS; Jesus Leonell Gonzalez |
| 6 | 12/28/16 | CS; Jesus Leonell Gonzalez |

| No. | Date | Participants |
|---|---|---|
| 7 | 12/28/16 | CS; Jesus Leonell Gonzalez |
| 8 | 12/28/16 | CS; Susana Lara-Guerra |
| 9 | 12/29/16 | CS; Johnny Joe Juarez |
| 10 | 12/29/16 | CS; Johnny Joe Juarez |
| 11 | 12/29/16 | CS; Johnny Joe Juarez |
| 12 | 1/19/17 | CS; Johnny Joe Juarez |
| 13 | 1/19/17 | CS; Johnny Joe Juarez |
| 14 | 1/19/17 | CS; Johnny Joe Juarez |
| 15 | 1/31/17 | CS; Jesus Leonell Gonzalez |
| 16 | 3/9/17 | CS; UC; Johnny Joe Juarez |
| 17 | 3/9/17 | CS; UC; Johnny Joe Juarez |
| 18 | 3/9/17 | CS; UC; Johnny Joe Juarez |
| 19 | 6/20/17 | UC; Susanna Lara-Guerra |
| 20 | 6/20/17 | UC; Johnny Joe Juarez |
| 21 | 6/21/17 | UC; Susanna Lara-Guerra |
| 22 | 6/21/17 | UC; Susanna Lara-Guerra |
| 23 | 6/21/17 | UC; Johnny Joe Juarez |
| 24 | 6/21/17 | UC; Johnny Joe Juarez |
| 25 | 6/21/17 | UC; Johnny Joe Juarez |
| 26 | 6/28/17 | UC; Johnny Joe Juarez |
| 27 | 6/28/17 | UC; Johnny Joe Juarez |
| 28 | 6/29/17 | UC; Johnny Joe Juarez |
| 29 | 6/29/17 | UC; Johnny Joe Juarez |

DATED July 2, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge